Cabell, P.
Every application for the specific execution of a contract is addressed to the sound discretion of the court, and the result of the application will always depend upon the particular circumstances of the case; for he who asks equity must do equity; and the prayer will always be denied, when to grant it would be inequitable towards those against whom the prayer is made. I would refer to the opinion of chief justice Marshall in Garnet &c. v. Macon & al. reported in 6 Call 308. and in 2 Brock. Rep. 185. for an able review of the cases, and a satisfactory exposition of the law upon this subject. In that case, the specific execution was refused under circumstances much weaker than those which exist in this case. The contract of sale in that case, as in this, was made in the year 1818. In that case, the vendor had the full legal and equitable title to the land, and the only objection on the part of the vendee was, that the land might be subject to an old debt due to one Campbell, and for which one of *17 the former owners of the land was surety. The suit was brought in December 1818, and was heard in the year 1S25. The chief justice was very doubtful whether the debt to Campbell was in fact a charge upon the land ; yet as that claim was a cloud lowering over the title, which could not be dissipated but by the decree of a court of equity, and as, before such a decree was attainable, the value of the land had greatly changed, that circumstance created, in his opinion, a strong objection to a specific performance; and on that ground, and that only, he dismissed the bill. In our case, the objection is much stronger. It is not a mere cloud lowering over the title, that is complained of, but the total absence of any sort of title in Lofftus or his heirs, for more than eight years from the time when be had bound himself to make the title; during which time the land had fallen in value more than 50 per cent.
It is said that Bryan ought to have made known, at an earlier period, his desire to rescind the contract. The fact is, that ho seems to have been willing to proceed with the contract, up to the time of Lofftus's death ; for he paid an additional instalment after the time when he ought to have received a conveyance, notwithstanding he must have seen that his contract was a disadvantageous one; for it is well known that there was a considerable fall in the value of property between October 1818 and March 1820. It was, however, not so distinctly marked as it was afterwards. It was not for the heirs of Lofftus, who had always been in default, and who were never in a situation to comply with the contract of their ancestor, to object to the conduct of Bryan in not demanding a rescission of the contract. Although Bryan might, at an earlier period, have objected to going on with the contract, it was not too late for him to do so in 1825 ; the default of Lofftus's heirs still continuing. That default continued three years longer, even if it were admitted that with the aid of the court *18 they were then able to make a good title. And that default, even if we could overlook what had occurred before, would be sufficient to bar their claim to specific execution.
It is said that Bryan, to entitle himself to a rescission of the contract, ought to have surrendered possession of the land. If that be true in general, I cannot think it was so in this case. He had paid nearly 4000 dollars of the purchase money, for the recovery of which he had no hope, Lofftus having died insolvent. I think he was therefore right in retaining the possession.
The view which I have thus taken of this case, renders it unnecessary to pronounce any opinion as to the sufficiency of the deeds made by the heirs of Lofftus, or to decide the question whether an unwilling vendee can be compelled, in any case, to accept a deed from the heirs of a vendor, who had contracted that he himself would make a deed with general warranty, but had failed to make it according to the contract, and then died, being still in default at the time of his death. For, conceding to the appellees all that they have contended for as to the sufficiency of those deeds; nay, admitting that Lofftus himself had been alive at the date of the decree, and had then been in a situation to make precisely such a deed as he had contracted to make, I should still be of opinion that bis long continued default, and the change of circumstances which had occurred during its continuance, would be a sufficient objection to a specific performance of the contract.
I am therefore of opinion that the court of chancery erred in compelling Bryan to an execution of the contract. He should, however, be compelled to deliver up the land to the heirs of Lofftus, to account for its rents and profits during the time he held it, and to release all his rights under the contract with Lofftus and the deeds in the record contained ; but he is entitled to a return of the purchase money paid by him, with interest from *19 the time he paid it, and also to have the value of any .... . permanent improvements which he may have put upon the land set off against the rents and profits, provided they do not exceed the amount of the said rents and profits. These matters should be referred to a commissioner, with directions to state an account between the parties on these principles. If, on the return of the report, it should appear that a balance is due from Bryan, he should be decreed to pay it; if in his favour, it should be decreed to him, and if there be no sufficient personal estate of Lofftus to pay the same, the land should be subjected to its payment: each party to pay his own costs, except as to taking the accounts, the costs of which should be equally divided between the parties.
Both decrees are therefore to be reversed with costs, and the cause remanded, to be proceeded in to a final decree, according to the principles now declared.
The other judges concurring, a decree was entered in the following terms:
“ The court is of opinion that the chancery court erred in compelling the appellant to an execution of the contract with Lofftus, in the proceedings contained. He however should be compelled to deliver up the land to the heirs of Lofftus and to account for its rents and profits during the time he held it, and to release all his rights under the contract with Lofftus and the deeds in the record contained ; but he is entitled to a return of the purchase money paid by him, with interest from the time he paid it, and also to have the value of any permanent improvements which he may have put upon the land set off against the rents and profits, provided they do not exceed the amount of the said rents and profits. These matters should be referred to a commissioner, with directions to state an account between the parties on these principles. If, on the return of the report, it should appear that a balance is due from the appellant, *20 he should be decreed to pay it; if in his favour, it should be decreed to him, and if there be no sufficient personal estate of Lofftus to pay the same, the land should be subjected to its payment: each party to pay own costs¡ except as to taking the accounts, the costs of which should be equally divided between the parties. Therefore, decree reversed with costs, and cause remanded to circuit court of Augusta, to be finally proceeded in pursuant to the principles of the foregoing opinion and decree.”