# Wytheville.

## G. R. Branner and C. C. Pierce, Trading as G. R. Branner & Company, v. K. Kaplan and Nathan Schiff.

### June 12, 1924.

1. Contracts—*Interpretation and Construction—Written Contracts—Questions of Law and Fact.*—The duty of construing written contracts rests with the court and not with the jury.

2. Landlord and Tenant—*Contract for Lease—Use of Premises—Case at Bar.*—In the instant case defendants agreed to sell their business, conducted on property leased from a railroad company, to plaintiffs for $400.00 cash and other consideration, defendants to give a lease of the property subject to the consent of the railroad, and if this consent could not be obtained the $400.00 should be returned to plaintiffs.

    *Held:* That the contract provided for a general renting of the premises to plaintiffs, without condition or restriction, except that the assent of the railway company was to be obtained, so that defendants were under obligation to assure to the vendees an assignment of the lease, for a definite term, with no restriction whatever as to the use of the premises, except such as are implied by law.

3. Landlord and Tenant—*Use of Premises.*—Unless restricted by the terms of the lease, a tenant may use the premises for any lawful purpose consistent with the character of the premises, and not amounting to waste.

4. Landlord and Tenant—*Contract for Lease—Use of Premises—Assignment of Lease—Case at Bar.*—In the instant case defendants contracted to sell their business to plaintiffs and assign them their lease from a railroad company of the premises occupied by the business. Defendants lease from the railroad company contained a number of restrictions. Plaintiffs paid defendants $400.00 cash. The language of the agreement of defendants purported to give an unrestricted lease of the property for a specified term.

    *Held:* That defendants had no right to claim the benefit of the contract, or damages for its breach, because under their lease with the railroad company they were never in a position to comply with their contract. All that they could do was to assign a lease, by the terms

of which the use of the property was greatly restricted, and which could be terminated by the railroad after four months' notice.

5. LANDLORD AND TENANT—*Contract for Lease—Lease without Restrictions.*—In the instant case defendants agreed to sell plaintiffs their business and assign a lease to them of the premises on which the business was conducted. In an action by plaintiffs to recover a cash payment made by them to defendants, the court refused an instruction that if "plaintiffs entered into a contract to purchase the defendants' business, and that they knew what kind of business they could and could not carry on at the time of the signing" of the contract, and they knew what restrictions were in the lease, then the jury must find for defendants.

    *Held:* That the instruction was properly refused, as there was no evidence that the vendees ever had any such knowledge, or that they were bound by anything except the contract, and it was shown that they had never seen the original lease.

6. VENDOR AND PURCHASER—*Landlord and Tenant—Contract for Sale or Lease of Land—Knowledge by Vendee of Onerous Building Restrictions.*—Where a contract for the sale or lease of land calls for a deed or lease with general warranty and covenants of title, knowledge by the vendee or lessee of the existence of onerous building restrictions in the deed under which the vendor or landlord holds, will not bar the vendee or lessee from setting up such restrictions as a defense in a suit for specific performance by the vendor, or in an action by the landlord for breach of contract.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiffs. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Page, Page & Page,* for the plaintiffs in error.

*Herman A. Sacks,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The plaintiffs in error, Branner & Company, hereinafter called the vendors, complain of a judgment for

$400.00 against them in favor of defendants in error, hereinafter called the vendees.

The pertinent facts appear to be these:    The vendors were the proprietors of a business conducted on property leased from the Virginian Railway Company, and agreed to sell it to the vendees for the consideration of $400.00 cash, $4,400.00 for lockers installed on the second floor of the leased building, and the business conducted therein at its inventory value, the vendees to pay a rental of $400.00 a month in advance, and the vendors to give a lease of the property in which such business was conducted for four years and six months from November, 1921, the rent to begin December 1, 1921.    The lease from the railway company contained a clause forbidding the subrenting of the property without written permission from the railway company; and it was agreed that their contract was subject to the company's approval of the assignment of the lease, and that in the event that this consent could not be obtained the $400.00 paid should be returned to the vendees.    It was testified to and not denied that the original lease from the railway company was not exhibited to the vendees.

The original contract between these litigants of November 12, 1921, contained this provision:    "It is further agreed that the parties of the first part will give the parties of the second part a lease for four years and six months from November 18, 1921, and rent to start December 1, 1921."    A more formal contract, dated November 17, 1921, was drawn by the attorneys of the vendors and substituted for the original.    This substituted contract contained this provision:    "It is further understood and agreed that the said G. R. Branner & Company are to lease the said building, or so much thereof as is now utilized by them, to the said

Kaplan and Schiff for the term of four years and six months, commencing on the 18th day of November, 1921."

When the time came for settlement of the second cash payment, $2,400.00, due thereunder November 30, 1921, the vendees declined to comply with the contract unless the vendors would expressly agree that they might sell on the premises sandwiches known as "frankfurters," but the vendors refused to embody this in the agreement, and said they were only selling them the business as conducted by C. R. Branner & Company; that they had sold sandwiches from the place and the plaintiffs might be able to do so. However, they would not put in the agreement that they could do this as they might not be allowed to do so. The reason for this is made perfectly apparent by reference to the original lease from the railway company, for it is there expressly provided that the tenant can only use the property for conducting a "drug store, ship supply store, and lockers over the store." The vendees then failed or refused to comply with the contract. As the probable explanation of this failure to consummate the agreement, it is shown that a profitable part of the business there conducted was the renting of lockers to the enlisted men of the United States Navy, who were stationed at the Naval Base in the immediate vicinity, and that about that time the number of men stationed there was greatly reduced, so that lockers, the aggregate rentals of which had theretofore been about $450.00 per month, did not thereafter aggregate more than half that amount.

This litigation ensued by notice of motion of the vendees to recover of the vendors the $400.00 which had been paid in cash at the inception of the agreement. There was a jury trial, a verdict in favor of the vendors,

which the trial court set aside and entered judgment for the $400.00 in favor of the vendees, and to this judgment a writ of error has been allowed.

The vendors assign three errors—that is, the judgment of the court in setting aside the verdict and entering judgment for the vendees, the granting of an instruction upon the motion of the vendees, and the refusal to grant an instruction offered by the vendors; but each of these assignments presents substantially the same question. That question is, whether the vendors have a right to retain the $400.00 paid on account, as damages for breach of the contract by the vendees, or whether the vendees have the right to recover it, as the trial court held.

It may be assumed that if the vendors were ready, able and willing to comply with their contract, and the refusal of the vendees was without justification or excuse, the judgment complained of is erroneous; while, on the other hand, if the vendors were in fault or unable to comply with their agreement, the vendees are entitled to recover, and the judgment is without error.

[1] This leads us to the written contracts, and to observe that the duty of construing these contracts, under the issues presented, rests with the court and not with the jury.

[2, 3] That both of these written contracts expressly provide for a general renting of the premises to the vendees, without condition or restriction, except that the assent of the Virginian Railway Company to the assignment of the lease was to be obtained, is manifest from the language used therein which has been hereinbefore quoted.

The customary legal rules for construing contracts apply. This is said in 5 Elliott on Contracts, section

4562:   "Unless restricted by the terms of the lease, a tenant may use the premises for any lawful purpose consistent with the character of the premises, and not amounting to waste."

In 16 R. C. L. 556, section 26, this is stated:   "The terms of a lease are of course governed by the provisions of the agreement, and where specific terms are not provided for by the agreement, the lease is to contain what is termed the usual and only the usual provisions." So that, as we construe these contracts, the vendors were under obligation to assure to the vendees an assignment of a lease, for a definite term, with no restriction whatever as to the use of the premises, except such as are implied by law.   This, then, requires a consideration of the original lease from the Virginian Railway Company to the vendors, for that is the only lease which they held themselves ready to assign.

[4] When we read that lease, we find a number of restrictions, but it is only necessary to consider two of them.   One of these reads thus:   "The party of the second part agrees to use the above-described land for the following purposes only:   Drug store, ship supply store; and lockers over the stores."   Another provides that should the party of the first part (the railway company) during the said five year term of this lease, or any yearly renewal period, require the said property, or any part thereof, for railroad purposes, it shall, upon four months' notice in writing to the party of the second part, have the right to cancel this lease and take possession of said property, without any liability for damages to the party of the second part."

The provisions of the contract for the sale of the business and the assignment of the lease for the premises on which it was conducted are interdependent and indivisible.   The language of the agreement of the vendors certainly purports to give an unrestricted lease

of the property for a specified term, and it seems clear that they have no right to claim the benefit of this contract, or damages for its breach, unless they were themselves prepared to comply with it. When they came into court with their defense to the action of the vendees, they exhibited their lease from the Virginian Railway Company, which clearly demonstrated that at no time were they ever in a position to comply with their own contract, and all that they were at any time able to do, or can be considered as having offered to do, was to assign a lease, by the terms of which the use of the property was greatly restricted, and which could be terminated by the owner after four months' notice.

The trial court gave the jury an instruction which reads thus: "The court instructs the jury that if you believe from the evidence that, by a written agreement entered into between the plaintiffs and the defendants, the plaintiffs agreed to buy from the defendants, for the price and upon the terms and conditions set out in said agreement, the business conducted by the defendants at Pine Beach, in Norfolk county, Virginia, including a lease for four and one-half years for the premises wherein said business was conducted; that the plaintiffs paid to the defendants the sum of $400.00 on account of the aggregate purchase price of said business and lease, which lease was to be free from all restrictions, that the defendants refused, or were unable, to give the plaintiffs a lease on the above premises free from restrictions, then the plaintiffs had the right to rescind this agreement and to recover back from the defendants the amount paid, as aforesaid; and if the plaintiffs did rescind said agreement, and the defendants retained the money paid them, as aforesaid, by the plaintiffs, then you must find for the plaintiffs."

This instruction properly construed these contracts,

and the jury were thereby told that the plaintiffs were entitled to recover, unless the defendants were able to assign them a lease free from restriction. As it is shown by the evidence that the vendees were never in a position to do this, it is manifest that the jury failed to obey this instruction when they found a verdict in favor of the defendants.

[5] The contrary view, which is relied upon by the vendors, is indicated by this instruction, which was refused: "The court instructs the jury that if you believe from the evidence that the plaintiffs entered into a contract to purchase the defendants' business, and that they knew what kind of business they could and could not carry on at the time of the signing of the second contract, and they knew what restrictions were in the lease, then you must find for the defendants."

The court properly refused this instruction, because there is no evidence upon which the jury could have concluded that the vendees ever had any such knowledge, or that they were ever bound by anything except the written contracts to which we have referred, and it is shown that they never saw the original lease until it was introduced in evidence by the vendors. These contracts for sale of the business and for the assignment of a lease, without any restrictions expressed in such contracts, bind both parties, and control the determination of the issues here presented.

[6] In *Scott* v. *Albemarle Horse Show*, 128 Va. 517, 104 S. E. 842, a suit for specific performance, it was held that where the contract for the sale of land calls for a deed with general warranty and covenants of title, knowledge by the vendee of the existence of onerous building restrictions in the deed under which the vendor holds, will not bar the vendee from setting up such restrictions as a defense in a suit for specific

performance by the vendor. Many cases are there carefully reviewed, and the principle applied to that contract applies to this.

Our conclusion accords with that of the trial judge, namely, that, as the vendors show by their own evidence that they were never able to comply with their contract to assure to the vendees an unrestricted lease of the property for the term specified, therefore they have no right to retain the amount received by them as damages for violation of a contract which they themselves were never able on their part to perform.

*Affirmed.*

SIMS, P., dissenting:

As the second contract, namely, that of date November 17, 1921 ("Exhibit B," as designated in the record), was executed by all parties, that contract, when read in the light of the surrounding circumstances as shown by the parol evidence, fixed the respective rights of the parties. The prior contract and the parol negotiations of the parties were all merged in the contract of November 17, 1921, hereinafter referred to as "the contract."

This action was brought by the defendants in error, Kaplan & Schiff (hereinafter called plaintiffs), to recover back the sum of $400.00 paid, on the date of the contract, on account of the purchase money for "the good will and lockers" sold as per the contract by them to the plaintiffs in error, Branner and Pierce (hereinafter called defendants). The contract expressly provides in what event the $400.00 mentioned shall be paid back by the defendants to the plaintiffs, namely, "in the event that the * * (defendants) are unable to get the approval and consent of said Virginian rail-

road to the subleasing by them of said property to the * * (plaintiffs), within the time above mentioned."

The testimony for the defendants, which was uncontroverted, was that the approval and consent of the railway company was gotten by the defendants within the required time. So that, certainly, the plaintiffs had no right to recover back the said $400.00 under the provision of the contract just mentioned.

As appears from the record, the plaintiffs base their alleged right to recover back said $400.00 on two grounds, which will be dealt with in their order as stated below, namely:

1. That by the contract they bought, and the defendants undertook to sell to them, the right to do any kind of mercantile business they might choose to do on the premises subleased to them as per the contract, unrestricted in any way, which included the right to sell "hot dogs." They admit that they refused to further perform the contract on their part at the time fixed by the contract for its completion, namely, November 30, 1921, and that they so refused on the ground that they had by that time discovered that the sublease aforesaid would not give them the right to sell "hot dogs," and that they had not discovered this until after the contract was executed by them.

There is direct conflict in the evidence for the respective parties on the subject of the surrounding circumstances existing at the time when the contract was executed. Since the verdict was in favor of the defendants, we must, of course, consider the facts thus in controversy to be as stated in the testimony for the defendants.

Ivor A. Page, a witness for the defendants, testified on the subject under consideration as follows:

"That he was the attorney who drew the second

agreement marked Exhibit 'B,' bearing date November 17, 1921, and that the plaintiffs wanted the defendants to put in the contract that they, the plaintiffs, had the right to sell 'hot dogs' and that the defendants refused to put it in the contract, stating that they were selling the business as it was and that they would not put in there that the plaintiffs had a right to do anything more than they, themselves, did; that the plaintiffs and defendants discussed this matter in his office and after the plaintiffs had asked that this be inserted in the contract and the defendants had refused, the second contract was drawn up and signed and delivered to the defendants by the plaintiffs, knowing that it had not been inserted in the contract; that on the day set for settlement the plaintiffs were not in a position to settle as they had not raised the money, and that Mr. Nusbaum, an attorney who was trying to raise the money for the plaintiffs, called him and stated that he could not get it for them; that after that Mr. Sacks, who represented the plaintiffs in this case, came to his office with a check for $2,600.00, made out by some other party than the plaintiffs and stated that he could not pay the same unless the contract was changed so as to give the plaintiffs the right to sell 'hot dogs,' as the party who turned the check over to him, and who was lending the plaintiffs the money, would not deliver the check unless this change in the contract was made, and upon the defendants' refusal to change the contract Mr. Sacks refused to deliver the check and plaintiffs refused to go through with the contract and demanded back the $400.00 which was deposited by them. That the plaintiffs never were in a position to settle and they stated to him that they did not have the money at the time of settlement, and Mr. Sacks stated this also; that the plaintiffs knew that they could only sell such

things as Branner & Company did as they had dis-
cussed it in his office, and Branner & Company had
refused to put it in written contract, and after the
refusal the contract dated November 17th was drawn
and executed and delivered by the plaintiffs to the
defendants."

There is nothing in the language of the contract which
is in conflict with what is stated in this testimony.
The language of the contract is entirely consistent with
such testimony. And certainly, when the contract is
read in the light of the surrounding circumstances dis-
closed by such testimony, it is manifest that the de-
fendants, by the contract, did not undertake to sell to
the plaintiffs, and that the plaintiffs did not buy of
the defendants, the right to sell "hot dogs," but
"merely the business as it was," namely, as it was
being conducted by the defendants at the date of the
contract.

The first ground on which the plaintiffs seek to re-
cover must, therefore, fail; and the plaintiffs are shown
by the evidence to have themselves breached the con-
tract by their action in refusing to complete it on the
ground just stated.

2. The plaintiffs claim that by the contract the de-
fendants undertook to give the plaintiffs a lease of the
premises for the full term of four and a half years
specified in the contract, free from any condition by
which it might be terminated by the railroad company,
the owner of the premises, before the expiration of such
term; whereas the fact was that there was the following
provision in the lease from the railroad company men-
tioned in the contract, namely, that should the railroad
company, during said term, "require the said property
or any part thereof for railroad purposes it shall, upon
four months' notice in writing to  *  *  *  (the de-

fendants) have the right to cancel this lease and take possession of said property, without any liability for damages * *;" and that by reason thereof the lease given by the contract was subject to, and not free from, the aforesaid condition; so that the defendants did not give to the plaintiffs such a lease as by the contract they undertook to give, and that the defendants thereby breached the contract.

The answer to this is that, from a reading of the contract, it plainly appears, as I think, that by it the defendants did not enter into a general or unqualified obligation to give a lease for the term mentioned; but merely to do a particular thing, namely, to sublet the premises to the plaintiffs for the term mentioned, under the lease from the Virginian railroad, under which the premises were held by the defendants at the time of the contract, as is expressly set out in the contract.

This appears from the provisions of the contract, with respect to the lease, which are as follows:

"It is furthermore agreed that the parties of the second part will pay a rent of $400.00, four hundred dollars, monthly in advance. It is further agreed that the parties of the first part will give the parties of the second part a lease for four years and six months, from November 18, 1921, and rent to start December 1, 1921.

*    *    *    *    *    *

"It is further agreed that the Virginian railroad will have to approve of the sublease and in case the Virginian railroad will not approve of said lease the said $400.00 will be returned to the parties of the second part."

It is elementary law that all leases and contracts for leases, like all other contracts, are made subject to such conditions as are imposed by law.

The undertaking above mentioned gave the plaintiffs express notice that the source of title of the defendants, to the term undertaken to be demised, was the Virginian Railroad Company—a railroad corporation—and, hence, gave the plaintiffs notice that the term undertaken to be demised was subject to such conditions as are imposed by law on all cases of real estate made by such a corporation. One of such conditions is that whenever the property owned by such a corporation, which has been leased by it for private use, is needed for railroad purposes, the lease is terminated by operation of law—it becomes *ultra vires.* 1 Elliott on Railroads (3d ed.), sec. 490, *et post.* Therefore, the aforesaid provision, contained in the aforesaid original lease, was nothing more than a condition which was imposed by law; and, with or without such provision, the lease, which was undertaken to be given by the contract in suit, was not a lease free from, but one subject to, such condition; and there was no breach of the contract on the part of the defendants consisting of the failure to give such a lease as the contract provided that they should give.

The result follows, from what has been said above, that there was no breach of the contract on the part of the defendants; but that there was a breach of the contract on the part of the plaintiffs, as aforesaid.

Moreover, the testimony for the defendants is, in substance, to the effect that, due to the breach of the contract on the part of the plaintiffs, the defendants suffered actual damages, certainly to the extent of the $400.00 involved.

I think, therefore, that for the reasons above stated, that the case should be reversed, and that judgment should be entered in favor of the defendants, dismissing the action.

There are, however, two other views of the case which lead to the same result, which are as follows:

3. Before the time fixed by the contract for the giving of the lease by the defendants to the plaintiffs—whether it be considered that the contract was for the aforesaid sublease or a straight out lease from the defendants—the plaintiffs absolutely repudiated the contract, not on the ground that the defendants could not give an unqualified lease for the term stipulated for, namely, for four years and six months, but on the sole ground that the lease provided for in the contract would not allow the sale of "hot dogs." This action of the plaintiffs excused the defendants from making any tender of any lease whatever. *Barnes* v. *Morrison,* 97 Va. 372, 378, 34 S. E. 93, and cases cited; *McDaniel* v. *Daves,* 139 Va. p. —, 123 S. E. 663 (opinion by Judge Burks handed down at this term).

As said in *Barnes* v. *Morrison* (opinion by Judge Buchanan), *supra,* at p. 378 (34 S. E. 59): "*   *   it is settled law that where a party to a contract absolutely repudiates it   *   *   it excuses the other party from making any tender of performance on his part."

4. If it were conceded that the contract obligated the defendants to give to the plaintiffs a lease for the term of four years and six months with no qualifications or contingencies whatever as to the length of such term, then this appears from the contract. Hence, it appears from the contract that the permission which was to be obtained from the railroad company by the defendants was permission to make such lease for such full term unqualifiedly. And the testimony of the witness for the defendants, Ivor A. Page, on this subject is express that "the permission mentioned in the contract to sublet the premises to the plaintiffs, which was to have been gotten from the Virginian Railroad

Company by a certain time was gotten before that time." This shows that, before the time fixed for the giving of the lease for four years and six months, the railroad company had given the defendants permission for them to give the plaintiffs the lease for such term. This was a permission to the defendants to give the lease for such full term. Having that permission, the defendants, at the time fixed by the contract for the giving of the lease, were in a position to have given the lease for the full term with no qualification or contingencies whatever as to the length of the term—for had the plaintiffs performed the contract on their part so as to have been entitled to receive the lease, and had the defendants given the unqualified lease just mentioned under the said permission from the railroad company, it is obvious that the railroad company would have been bound thereby in so far as such company could be lawfully bound, notwithstanding the provisions on the subject in the original lease to defendants.

So that I think that, on the two additional grounds mentioned also, the case should be reversed and that judgment should be entered in favor of the defendants.