## Staunton

CHARLES PINSKY AND NANCY PINSKY v. JACK KLEINMAN, ET AL.

September 4, 1956.

Record No. 4537.

Present, All the Justices.

The opinion states the case.

*Herman A. Sacks* (*Henry Mount, Sacks & Sacks*, on brief), for the appellants.

No brief nor argument for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Jack Kleinman and Gladys Kleinman brought this suit in equity against Charles Pinsky and Nancy Pinsky, W. M. Bott, lessor of the Kleinmans, and certain of the creditors of the Kleinmans. The main purposes of the suit were to recover a judgment against the Pinskys

for $7,000, evidenced by a note, and to have the court direct Steingold and Leitch, who were not made parties to the suit, how to dispose of a fund held by them in escrow.

By a written contract dated September 15, 1954, the Kleinmans sold to the Pinskys their drugstore business in Norfolk known as Federal Cut Rate, consisting of the stock of goods, furniture, fixtures, equipment and good will, for the price of $10,000, of which $100 had been paid as a deposit, $7,000 was evidenced by a note secured by a deed of trust on the property sold, and $2,900 was paid to Steingold and Leitch, as escrow agents, to be held by them in escrow for sixty days, upon the expiration of which they were to pay all debts of Federal Cut Rate unless W. M. Bott, the owner and lessor of the building in which the business was conducted, "has taken action for termination, cancellation or forfeiture of the said lease by then, or has refused to accept payment of rent from said Charles Pinsky and Nancy Pinsky."

By a writing dated September 16, 1954, the Kleinmans confirmed to the Pinskys the understanding that in the event the agreement of sale was cancelled under its terms, the Pinskys would be entitled to retain all profits realized during their operation of the business.

In the contract of sale the Kleinmans assigned to the Pinskys the lease from Bott for the premises, which would expire December 31, 1958, carrying a rental of $500 a month, which the Pinskys agreed to pay to Bott.

The Kleinmans also agreed to save the Pinskys harmless from litigation or difficulties in the event Bott refused or attempted to refuse to recognize the rights of the Pinskys under the assignment of the lease, and the contract in terms provided: "This contract is predicated upon the owner of the aforesaid premises [Bott] allowing the vendees [Pinskys] to remain in possession of the aforesaid premises so long as the vendees comply with the terms of the aforesaid lease."

The lease so attempted to be assigned was made by Bott to Sol Hechtkopf for a term of ten years from January 1, 1949, carried a rental of $500 a month after January 1, 1954, and contained a provision that the lessee could not assign the lease for the whole or any part of the term without the written consent of the lessor. All rights and liabilities of the parties were to extend to their successors, and so far as the lease was assignable by its terms, to the assigns of the parties.

By writing dated September 29, 1950, Hechtkopf had assigned this lease to the Kleinmans with the written consent of Bott, but Hechtkopf was not released from any obligations imposed during the original term.

Bott filed his answer to the bill of complaint averring that he had not accepted any rent from either of the Pinskys and that he had no agreement with the Pinskys to pay any rent.

The answer of the Pinskys alleged that no assignment to them of the lease had ever been executed; that Bott had not consented to such an assignment and that pursuant to the terms of the agreement in that event they had moved out of the property and returned the keys to the complainants' attorney.

The evidence confirmed the averment that there had been no assignment by Bott of the lease to the Pinskys and Bott testified that he had never at any time recognized them as his tenants, and that he had returned two checks sent him by the Pinskys for the rent. Charles Pinsky testified that the checks so returned were two certified checks and that from September 17 to November 30, 1954, he endeavored to get a lease on this store which Bott refused to give and, consequently, he moved out on the latter date without any process of law requiring him to do so.

Subsequently, it was testified, Bott had the property sold under a distress warrant and at the time of the hearing a clothing store was being operated on the premises.

The court took the view that under the contract the Pinskys had no right to vacate the premises but had to stay on until they were dispossessed. The decree appealed from dismissed without prejudice the complainants' claim for judgment for the $7,000 note on the ground that in an action by the Pinskys against the Kleinmans in the Court of Law and Chancery of the City of Norfolk, the Kleinmans had filed a cross-claim for a judgment against the Pinskys on the same note and afterwards took a nonsuit thereon, and hence they could not maintain a suit for the same cause in the Circuit Court of the City of Norfolk. Code § 8-220.

But the decree further adjudicated that the sum held in escrow by Steingold and Leitch, stated to be $2,650, belonged to the Kleinmans subject to the payment of the debts of such of the defendants as were creditors of the Kleinmans on September 15, 1954, and not yet paid, and referred the cause to a commissioner to report who the creditors

were and the amounts due them. This part of the decree we hold to be in error.

An essential element of the sale was the lease held by the Kleinmans for the premises in which the business sold was to be conducted. This lease the vendors assigned to the vendees and stated in the contract that it was predicated on the owner of the premises allowing the vendees to remain in possession so long as they complied with the terms of the lease. Furthermore, the contract provided that the escrow agents were to hold the escrow fund for sixty days, and then pay the debts unless Botts had taken action to terminate the lease "or has refused to accept payment of rent" from the Pinskys which, as stated, he did refuse to do.

The necessary inference from this and other terms of the contract as alluded to is that if the Kleinmans could not make an effective assignment of the lease the contract of sale would not be binding on the Pinskys. As stated, the sale was predicated on the Pinskys being allowed to remain in possession so long as they complied with the terms of the lease. They could not comply with the terms of the lease if Bott refused to receive the rent and to recognize them as tenants.

The vendees should not be compelled to pay to the vendors the purchase price for that which the vendors could not deliver. A purchaser entitled to a good title need not pay the purchase money until he gets good title. 19 Mich. Jur., Vendor and Purchaser, § 45, p. 354; *Rosenberger v. Bowen*, 84 Va. 675, 5 S. E. 699. If the vendor is unable to convey that which he contracted to sell, the vendee may, if he is himself ready, able and willing to perform, elect to rescind and recover back the amount he has paid on the contract. 55 Am. Jur., Vendor and Purchaser, § 541, p. 935; *Bryan v. Lofftus' Adm'rs*, 1 Rob. (40 Va.) 12, 39 Am. Dec. 242.

"* * 'It is a common practice for purchasers of real estate, upon the refusal or inability of the vendor to convey, to bring an action of assumpsit for the purchase money, instead of covenant to recover damages for a breach of the contract.' " *Robertson v. Robertson*, 137 Va. 378, 384, 119 S. E. 140, 141.

In *Branner v. Kaplan*, 138 Va. 614, 123 S. E. 668, the vendors sold to the vendees their business conducted on leased property under a lease forbidding subleasing without written consent. By the contract of sale the vendors agreed to lease the building or the part used by them to the vendees for a specific term. The vendees made a cash

payment of $400, which was to be returned if consent to the assignment of lease could not be obtained. Such consent was obtained but when the second payment fell due the vendees refused to pay because of restrictions in the lease and sued to recover the $400. The decisive question was whether the vendees had a right to recover this $400, or whether the vendors could keep it as damages for the vendees' breach of the contract.

The court held that the vendees had a right to recover the $400; that the vendors were obligated to assure to the vendees the assignment of the lease for a definite term without restrictions; that the provisions of the contract for the sale of the business and the assignment of the lease were interdependent and indivisible; that the vendors had no right to claim the benefit of the contract or damages for its breach unless they were themselves prepared to comply with it; and when the evidence showed they were unable to give the vendees a lease of the premises free from restrictions, the vendees had the right to rescind the agreement and recover from the vendors the $400 cash payment which the vendors had no right to retain "as damages for violation of a contract which they themselves were never able on their part to perform." 138 Va. at 622, 123 S. E. at 671.

The holding in that case is applicable and controlling in this. The Kleinmans were not able to perform their contract to assign to the Pinskys the lease without which the latter could not carry on the business sold to them by the Kleinmans. Not only so, but according to the evidence the stock of goods has passed into other hands because of action taken by the Kleinmans' lessor. It should not be required that the money in the hands of the escrow agents, paid to them by the Pinskys on the purchase of property which the Kleinmans failed to deliver, be now paid to the Kleinmans or their creditors and thereby leave the Pinskys to such relief as they might get in an action for damages against the Kleinmans for their breach of the contract.

For the reasons stated, that part of the decree which holds that the money in escrow in the hands of Steingold and Leitch is the property of the Kleinmans, subject to the payment of the Kleinmans' debts, is reversed; and, since the escrow agents are not parties to the suit and no relief against them can now be granted to the Pinskys, this cause is remanded to the trial court to permit the Pinskys to implead the escrow agents and recover from them the money paid to them by the Pinskys and to which the Pinskys are entitled according to the views herein expressed. Rule 2:14.

*Reversed and remanded.*