# CHARLESTON.

O. E. HOUCHINS *v.* CARY HOLCOMB

(No. 6244)

Submitted September 18, 1928.  Decided September 25, 1928.

*Thomas N. Read* and *Thomas L. Read,* for appellant.
*A. D. Daly,* for appellee.

WOODS, JUDGE:

Cary Holcomb, by a writing bearing date August 31, 1926, agreed to purchase from O. E. Houchins "a twenty-seven acre tract of land, more or less, * * * being the property on which Oscar Honaker now lives and resides," for the sum of $1,000.00—$100.00 down, and the balance on September 1, 1926, on surrender of a deed for said tract "free from all incumbrances." The deed tendered on the latter date called for twenty-five acres and seventy-five poles, and carried the following provisions: "It is understood and agreed that the right of way for a tramroad held by the Alderson Brown Stone Company is excepted from and not intended to be conveyed by this deed. It is also understood that C. E. Lewis, from whom this property was originally purchased by the said O. E. Houchins, reserves and holds a right of way leading from the lands of C. E. Lewis, through the property herein conveyed, to the public road, said right of way starting at or near the cliff, the beginning corner of the 25 acres and 78 poles, which is the corner to Lewis, Glenray Lumber Company, and leading around above the garden on property herein conveyed and connecting with road now used in going to and from the public road to the property of said C. E. Lewis, said right of way not intended to be conveyed by this deed." Holcomb refused to accept it; his investigation in the meantime having revealed, in addition to the above alleged incumbrances, that there was an unreleased deed of trust on the property, and that the land had been forfeited for non-payment of the 1925 taxes. After the deed of trust was released and the taxes paid, plaintiff made another tender, and on refusal of defendant to accept the deed, filed a bill in the circuit court of Summers county praying for specific performance of the contract. And on July 21, 1927, a decree was entered requiring defendant to pay over $844.00 (a $56.00 abatement having been allowed for the deficiency of one acre and eighty-five poles), upon tender by plaintiff

of an apt and sufficient deed of general warranty covering the tract of twenty-five acres and seventy-five poles. It is from this decree that the defendant prosecutes this appeal.

The defendant insists that the demurrer to the bill should have been sustained, alleging in support thereof: (1) That the contract of sale was made by the agent of the plaintiff, and that the bill alleges that it was so made; and (2) that the bill did not state that the vendor is able and willing to convey a sufficient title. As to the first point the contract was not made in the name of the agent but in the name of the principal himself, and the suit was brought in the name of the principal, the contract being filed with the bill and made a part of it, wherein it is expressly stated that the agent was the authorized agent of the plaintiff. By bringing suit, the plaintiff, in effect, represented that the agent was so authorized. 2 C. J. 513.

As to the second point, the bill averred proper and sufficient title to the land in the plaintiff, and further avers that the plaintiff prior to the institution of this suit tendered to the said defendant an apt and sufficient deed covering said property *free from all incumbrances,* according to said contract, duly signed and acknowledged by the plaintiff and his wife, and that the title of the plaintiff thereto was full, complete and unchallenged, and stood ready to make such tender good. All that was necessary, according to the terms of the contract stated in the bill, was for the plaintiff to make a deed in accordance with his contract. *Tavenner* v. *Barrett,* 21 W. Va. 679. This, as we have shown, was averred in the bill. In the absence of a deed tendered with the bill, which failed to conform to the contract, such averments in the bill made it good on demurrer. *Heavner* v. *Morgan,* 30 W. Va. 335. Upon the hearing, the plaintiff introduced as a part of his testimony the deed that he had tendered to the defendant previous to the filing of the suit, and which he continued to stand ready to deliver to the defendant.

The defendant maintains that the alleged exceptions in the deed, hereinbefore set out *in haec verba,* violate the terms of the contract that he was to have a deed ''free from all

incumbrances''; that the two rights of way across this small tract of land,—one running through the entire tract (16 or 20 feet in width) for a railroad, the other across the tract for a private right of way and road,—constitute serious incumbrances, greatly reducing the value of the land. The plaintiff sought to avoid the effect of this contention by insisting that the defendant knew of such, and had been informed of their existence prior to the written contract. This knowledge the defendant denied. There had been a railroad on this site some years before, but it had been taken up; and there was nothing there but some ties on the old railroad bed. Under the circumstances, even had the defendant seen it, the fact of its having fallen into disuse would have led him to presume that the grantor was in position to make good his covenant to convey the tract free from all incumbrances. It was the discovery of these incumbrances which caused the defendant to refuse the title and deed, and to demand that his $100.00 cash payment be returned to him. While there is conflict in the testimony as to whether the defendant knew of these incumbrances, the contract subsequently executed is in law the repository of all negotiations between the parties that preceded its execution. When a written contract upon its face is couched in such terms as to import a legal obligation without any uncertainty as to the object or the extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent of the undertaking were reduced to writing. *Jones* v. *Kessler*, 98 W. Va. 1.

Upon looking to the contract under consideration here, we find that the plaintiff specifically covenants that he will deliver to the defendant a deed free from all incumbrances. This leaves for our consideration the controlling question of the case: Do the exceptions contained in the deed constitute such an incumbrance as in law will defeat specific performance? The rule was stated by Chief Justice Marshall in *Garnett* v. *Macon*, 6 Call. (Va.) 308: ''Both on principle and authority, I think it is very clear that a specific performance will not be decreed on the application of the vendor, unless his ability to make such a title as he has agreed to make, be unquestionable. * * * In a contract for the purchase of

fee simple estate, if no incumbrance be communicated to the purchaser, or be known to him to exist, he must suppose himself to purchase an unincumbered estate, and a court of equity will not interpose its extraordinary power of compelling a specific execution of the contract, unless the person demanding it can himself do all that it is incumbent on him to do. * * * The objection is not entirely confined to cases of doubtful title. It applies to the incumbrances of every description, which may, in any manner, embarrass the purchaser in the full and quiet enjoyment of his purchase.'' In the instant case the defendant bargained for a title free from all incumbrances. An incumbrance, within the terms of the covenant against them, is said to be ''every right to, or interest in, the land, to the diminution of the value of the land, but consistent with the passage of the fee by the conveyance.'' 3 Wash. Real Prop. (6th ed.), 440, citing *Prescott* v. *Trueman,* 4 Mass. 627; *Dugger* v. *Oglesby,* 99 Ill. 405; *Wilson* v. *Irish,* 57 Iowa 184; *Kramer* v. *Carter,* 136 Mass. 507. A private right of way is an incumbrance, the existence of which is a breach of the covenant to execute a deed free of all incumbrances. *Smith* v. *Ward,* 66 W. Va. 194. A covenant against incumbrances is broken by the existence, at the time of executing the deed, of a continuing right of way over the land granted, in favor of a third person. *Smith* v. *White,* 71 W. Va. 639.

Is the right granted to the Alderson Brown Stone Company an incumbrance? In an extensive note on the question of the construction of covenants against incumbrances, in 30 L. R. A. (N. S.) 844, it is stated that the decided weight of authority is to the effect that a railroad right of way constitutes a breach of the covenant against incumbrances, irrespective of the knowledge of the grantee as to the existence of such right of way. However, a consideration of the cases, there cited reveals the fact that the term ''right of way'', as therein used, refers to those cases wherein the railroad acquired a mere easement, and not a fee simple in the strip of land itself, as it is suggested the deed to the Alderson Brown Stone' Company sought to do. If said deed did convey a fee (which we do not decide), no interest whatever in the

present right of way would pass by virtue of the conveyance which plaintiff seeks to force upon the defendant. Of course, in such a case, the defendant could obtain relief by showing that the plaintiff had misrepresented himself as the owner of the fee; but this question was concluded against the defendant by the finding of the chancellor at the trial. The deed to the Alderson Brown Stone Company, in addition to granting a right of way, also included a grant of "additional room or ground for the necessary ditches along any tram or railroad and constructed by it through said lands." The provision just quoted plainly creates an easement in the land contracted for by the defendant. The amount of land to be taken for the latter purpose would necessarily be dependent alone upon the judgment of the owner of the strip in fee, restricted only by what was reasonably necessary for the purposes of constructing and maintaining a proper roadbed for his railroad. It is apparent that this use of such right might become most burdensome to the owner of the fee. This is especially true in view of the fact that the tramroad runs through the creek valley; the rest of the tract being steep mountainside land.

Turning to a consideration of the right of way reserved by C. E. Lewis, what do we find? According to the testimony, this consisted of a graded way of sufficient width to accommodate an automobile across the width of said tract of twenty-seven acres, running from the lands of Lewis to the county road. This way is obviously most burdensome to the servient estate, and, in the light of the authorities, clearly constitutes an incumbrance within the meaning of the contract.

This latter incumbrance alone would defeat specific performance. Every application for specific performance of a contract is addressed to the sound discretion of the court regulated by established principles. If it will work injustice, it will be refused. *Heflin* v. *Heflin,* 63 W. Va. 29. The application of the foregoing legal principles to the facts in the instant case, in our opinion, calls for a refusal of the relief prayed for.

The decree will therefore be reversed, the contract rescinded, and a decree given in favor of defendant for the cash payment made by him, with interest.

*Reversed and rendered.*