John R. W. STERLING, Plaintiff,

v.

Leroy J. BLACKWELDER et al.,
Defendants.

Civ. A. No. 3207.

United States District Court
E. D. Virginia,
Alexandria Division.

June 26, 1968.

See also 4 Cir., 405 F.2d 884.

Richard M. Millman, Washington, D. C., for John R. W. Sterling.

Hazel, Beckhorn & Hanes, Fairfax, Va., for Mary Louise Blackwelder.

Alfred Hiss, Arlington, Va., for Leroy Blackwelder.

Miller, Brown & Gildenhorn, Washington, D. C., for Wallace F. Holladay.

## MEMORANDUM ORDER

KELLAM, District Judge.

On August 28, 1967, Wallace F. Holladay (Holladay) submitted a contract offer for the purchase of the property described in this suit as the "Moorefield Farm" (Farm), and including Parcels A, B, C, D and E as shown on survey of Herman L. Courson, C.S., dated May 19, 1967, to Plato Cacheris, Special Master (Master), appointed by the Court to receive offers for said property. A deposit of $50,000.00 was made pursuant to the terms of the contract, with balance of $950,000.00 to be paid within ninety days following date of execution of the contract. The contract was subject to confirmation by the Court and, among other things, provided:

> The said real estate will be sold free and clear of all liens and encumbrances except the real estate taxes for the current year 1967, which shall be the obligation of the purchaser.

The offer was reported to and accepted by the Court. Some of the parties in interest appealed the Court's action in accepting the offer to the Circuit Court of Appeals for the Fourth Circuit, but it confirmed the District Court's action in accepting the offer. The contract called for settlement within ninety days after the District Court accepted the offer. By letter of November 24, 1967, to Master, Holladay sought an extension of time for settlement so that he would not incur cost of title examination and finder's fee for a loan to finance the purchase while awaiting a decision of the Court of Appeals. Master responded by letter of November 30, 1967, that the appeal had just been disposed of and that settlement would be expected December 20, 1967. On December 20, 1967, after previous telephone conversation Holladay's counsel wrote Master that there were numerous encumbrances upon the property, "including nine rights-of-way" and as a result thereof, it was "not economically feasible to develop the property in the manner which he originally intended." He requested a return of the deposit.

It appears from the evidence presented at a hearing on Holladay's petition for return of the said deposit, and the exhibits, that there are some nine separate easements or rights-of-way in and over the subject property. Holladay did not know of their existence until December 1, 1967. Said easements or rights-of-way are perpetual and exist in favor of the following:

1. In Deed Book V–15, page 279, dated May 26, 1942, in favor of Virginia Public Service Company, for a pole line in its present location, with ingress and egress to the easement for maintenance, and right to cut and trim, and keep trimmed, from the land of the owner such limbs, trees, etc., likely to interfere with operation of the line.

2. In Deed Book 1138, page 232, dated October 27, 1953, to Virginia Electric and Power Company, to construct, etc., pole line for electricity, telephone, with desired attachments, with full ingress and egress from and over property of owners to construct, maintain, etc., with right to cut all trees, etc., interfering with the line.

3. In Deed Book 1799, page 576, dated August 10, 1959, to Chesapeake and Potomac Telephone Company, for communication system consisting of poles, wires, cables, fixtures, with ingress and egress over owner's land, right to cut down trees, etc., within 15 feet of the Company's facilities.

4. In Deed Book 1996, page 398, dated January 31, 1961, to Virginia Electric and Power Company, for pole lines, etc., 25 feet in width, with right of ingress and egress, right to cut trees, etc.

5. In Deed Book 1987, page 420, dated March 27, 1961, taking by Commonwealth of Virginia of 3.7078 acres of land for highway purposes, with right to use such additional areas as may be necessary for proper construction and maintenance of channel change as indicated on plans.

6. In Deed Book 2009, page 30, dated May 29, 1961, taking by Com-

monwealth of 12.59 acres, with right to use such additional areas as may be necessary for proper construction and maintenance of channel change as indicated on plans.

7. In Deed Book 2244, page 213, dated January 21, 1963, taking by Commonwealth of 0.8926 of an acre, "together with the permanent right and easement to use the additional areas shown as being required for the proper execution and maintenance of the work."

8. In Deed Book 2428, page 663, dated February 10, 1964, to Board of Supervisors of Fairfax County, Virginia, easement for "constructing, operating, maintaining, adding to or altering present or future sewer lines * * * plus necessary manholes, etc.," with right to trim trees, etc.

9. In Deed Book 2733, page 651, dated February 11, 1966, to Board of Supervisors of Fairfax County, easement for sanitary sewer shown on plat.

Copies of the above-mentioned easements are filed as exhibits in this case.

While no plat of the property described in the contract has been submitted to the Court, no one questions the fact that the said easements are in, over and upon the property covered by the contract. Two title examiners so testified. All parties agree there are also some liens by way of deeds of trust and judgments against the property. These liens could be discharged from the proceeds of sale.

The question is, do the above easements constitute encumbrances on the property? Holladay says they do. The contract is clear and provides the property is sold "free and clear of all liens and encumbrances," except real estate taxes for 1967. No attempt was made by Master to remove or eliminate any of the above-mentioned easements. While some comment was made as to whether a deed was tendered, or whether Holladay was ready to settle, it seems clear from the facts the parties understood each other, namely, purchaser would not accept title with the easements thereon, and seller did not offer to (and could not) convey except subject to the easements. The issue is, are they encumbrances?

The language of the easements varies. The rights granted by the easements are paramount to those of a purchaser. They restrict the use of the property over which they extend. They constitute an interest or right in the land, and the value and use of the land is thereby diminished. Experts have often said the value of such easements is equal to the fee simple value of the land over which they extend, with resultant damage to the residue. The right of control, to build up, to sell and dispose of, and use of such easement is restricted. Some rights granted extend to the lands adjoining the easements—to cut trees, etc.—and some of them are not limited to exact width, etc. The contract was made, accepted, was to be enforced in Virginia, and dealt with Virginia realty. The law of Virginia on construction of the contract applies. Hardy-Latham v. Wellons et al., 415 F.2d 674, decided June 4, 1968 (4th Cir.)

The Code of Virginia, 1950, as amended, § 55–72, provides that a covenant "free from all encumbrances" shall have as much effect as the words "and that freely and absolutely acquitted, exonerated and forever discharged, or otherwise by the said grantor or his heirs saved harmless and indemnified of, from and against any and every charge and encumbrance whatever."

Michie's Jur. Vol. 5, page 248 ¶ 25, dealing with covenants against encumbrances, says:

An encumbrance, within the terms of the covenant against them, is said to be "every right to, or interest in, the land, to the diminution of the value of the land, but consistent with the passage of the fee by the conveyance." Thus it is held that, where real estate is conveyed with covenants of general warranty of title, as abutting a public road, but, due to mistake of the parties as to the location of the way, the property actually encroaches thereon,

the road constitutes an encumbrance within the meaning of the covenants. Similarly, a private right of way over land is an encumbrance.

Statutes in both states provide, in substance, that a covenant, by any grantor in a deed, containing the words "free from all encumbrances," shall have the same effect as if the grantor had convenanted for himself, his heirs and personal representatives that the premises are freely and absolutely acquitted, exonerated and forever discharged, and the grantee, his heirs and assigns will be saved harmless and indemnified of, from and against any and every charge and encumbrance whatever.

In 20 Am.Jur.2d, page 644, § 81, dealing with covenants, etc., against encumbrances, the author says:

A covenant against encumbrances is a stipulation by the covenantor that there are no outstanding rights or interest to the estate conveyed or any part thereof which will diminish the value of the estate, but which are consistent with the passing of the estate. An encumbrance, within the terms of such a covenant, may be defined as every right to, or interest in, the land, which may subsist in a third party, to the diminution of the value of the land, but at the same time consistent with the passage of the fee thereto.

A covenant against encumbrances does not depend for its existence upon the extent or amount of the diminution in value, but extends to cases where, by reason of the burden, claim, or right, the owner does not acquire complete dominion over the land covered by his conveyance or deed. Thus, a lien or easement is properly viewed as a burden upon land, depreciative of its value, notwithstanding it does not directly conflict with the passage of title thereto. A burden may be only inchoate, yet if it is a right which may be enforced against the property and against the will and consent of the owner, it is within the category of an encumbrance.

Again at page 653, ¶ 90:

That group of rights or interests in land, comprehended under the broad term "easements," is within the purview of the term "encumbrances" as used in covenants against encumbrances in deeds, since an outstanding easement, such as a right of way across the premises, used and enjoyed, is such a claim or right as interferes with the possession of the proprietor, affects the estate both in quantity and value, and therefore falls within the terms and spirit of the covenant against encumbrances.

Houchins v. Holcomb, 106 W.Va. 79, 144 S.E. 884, dealt with a contract to purchase containing the covenant "free from all encumbrances." The property was encumbered by an easement for a tramroad. Here it was said:

Upon looking to the contract under consideration here, we find that the plaintiff specifically covenants that he will deliver to the defendant a deed free from all incumbrances. This leaves for our consideration the controlling question of the case: Do the exceptions contained in the deed constitute such an incumbrance as in law will defeat specific performance? The rule was stated by Chief Justice Marshall in Garnett v. Macon, Fed.Cas.No. 5,245, 6 Call. (Va.) 308:

"Both on principal and authority, I think it very clear that a specific performance will not be decreed on the application of the vendor, unless his ability to make such a title as he has agreed to make, be unquestionable. * * * In a contract for the purchase of a fee-simple estate, if no incumbrance be communicated to the purchaser, or be known to him to exist, he must suppose himself to purchase an unincumbered estate, and a court of equity will not interpose its extraordinary power of compelling a specific execution of the contract, unless the person demanding it, can himself do all that it is incumbent on him to do. * * The objection is not entirely con-

fined to cases of doubtful title. It applies to incumbrances of every description, which may, in any manner, embarrass the purchaser in the full and quiet enjoyment of his purchase."

In the instant case the defendant bargained for a title free from all incumbrances. An incumbrance, within the terms of the covenant against them, is said to be "every right to, or interest in, the land, to the diminution of the value of the land, but consistent with the passage of the fee by the conveyance." 3 Wash. Real Prop. (6th Ed.) 440, citing Prescott v. Trueman, 4 Mass. 627, 3 Am.Dec. 246; Dugger v. Oglesby, 99 Ill. 405; Wilson v. Irish, 57 Iowa 184, 6 N.W. 591, 10 N.W. 343; Kramer v. Carter, 136 Mass. 507. A private right of way is an incumbrance, the existence of which is a breach of the covenant to execute a deed free of all incumbrances. Smith v. Ward, 66 W.Va. 194, 66 S.E. 234, 33 L.R.A. (N.S.) 1030. A covenant against incumbrances is broken by the existence, at the time of executing the deed, of a continuing right of way over the land granted, in favor of a third person. Smith v. White, 71 W.Va. 639, 78 S.E. 378, 48 L.R.A. (N.S.) 623.

Miller v. Schwinn, 72 App.D.C. 282, 113 F.2d 748 (D.C.Cir.), dealt with the question of whether a sewer easement constituted an encumbrance, and constituted a violation of a covenant in contract to convey free of encumbrances. At page 751 (113 F.2d 751) the Court said:

An encumbrance has been defined as "every right to, or interest in the land granted, to the diminution of the value of the land, but consistent with the passing of the fee of it by the conveyance". Prescott v. Trueman, 4 Mass. 627, 629, 3 Am.Dec. 246. The plaintiff's dedication of the six foot strip across one side of parcel C to the Commission gave the latter perpetual and absolute authority to install, repair and replace therein a sewer to provide service for other property as well as parcel C. Existence of an easement of this character is regarded by the great weight of authority as contravening a covenant against encumbrances." (footnote omitted).

Numerous cases are cited in the footnote in support of this holding. It was further contended that the sewer easement was not an encumbrance because the easement was six feet wide and extended along the boundary line, and that zoning prohibited building within eight feet of the line, hence purchaser was not deprived of anything. In disposing of this, the Court said (113 F.2d 752):

* * * Ownership subject to an easement for light and air is obviously something different from ownership subject to an additional easement for installation, repair and replacement of a sewer line serving several properties. Moreover, the zoning regulation does not represent a permanent prohibition against building to the same extent as the irrevocable dedication. Not inconsistent with testimony in the record regarding the nature of the zoning regulation is the possibility that, by acquiring an adjoining parcel of land, the owner of parcel C might be entitled to build up to or past the present boundary. Another contingency, not too remote for consideration, is the possibility of change in the zoning regulation itself. Thus possibilities for utilization of the area in question, not foreclosed by the zoning regulation, are defeated by the dedication. Concerned as we are in this case with property subdivided for apartment residences, we are of the opinion that, assuming the zoning prohibition against building in the eight foot strip abutting the boundary is not an encumbrance, the surrender of other rights of ownership involved in the dedication of the six foot strip for sewerage purposes does constitute such an encumbrance.

With such an encumbrance, the title was not marketable within the language

of Madbeth, Inc. v. Weade, 204 Va. 199, 129 S.E.2d 667, at 669, where the Court defined "marketable title":

A marketable title is one which is free from liens or encumbrances; one which discloses no serious defects and is dependent for its validity upon no doubtful questions of law or fact; one which will not expose the purchaser to the hazard of litigation or embarrass him in the peaceable enjoyment of the land; one which a reasonably well-informed and prudent person, acting upon business principles and with full knowledge of the facts and their legal significance, would be willing to accept, with the assurance that he, in turn, could sell or mortgage the property at its fair value. Cogito v. Dart, 183 Va. 882, 887, 33 S.E.2d 759; McAllister v. Harman, 101 Va. 17, 25, 34 S.E. 474, 42 S.E. 920; Clark v. Hutzler, 96 Va. 73, 76 77, 30 S.E. 469; Anno. 57 A.L.R. 1284.

 Holladay should not be required to pay the purchase price for that which Master could not deliver. "A purchaser entitled to a good title need not pay the purchase money until he gets good title." Pinsky v. Kleinman, 198 Va. 360, 94 S.E.2d 267, 269.

 It is said by those opposing the refund to Holladay, that he had knowledge of the easements at time he agreed to purchase the property. Holladay denies any such knowledge and the evidence does not establish knowledge on his part. It would be of no consequence in any event, since his knowledge would not take away his right to rely upon the covenant in the contract. This question was answered in Adams v. Seymour, 191 Va. 372, 61 S.E.2d 23, at page 27, where the Court said:

The evidence as we must view it shows only that the plaintiffs had both constructive and actual knowledge of the timber deed. That alone was not a sufficient defense to the suit on the covenant against encumbrances. A grantee may rely for protection on the covenants in his deed, even though

he had constructive or actual notice of encumbrances. Knowledge of the existence of an outstanding encumbrance may be the very reason for insisting on a covenant against it. Bossieux v. Shapiro, 154 Va. 255, 261, 153 S.E. 667, 668; Scott v. Albemarle Horse Show Ass'n, 128 Va. 517, 537, 104 S.E. 842, 848; Olcott v. Southworth, 115 Vt. 421, 63 A.2d 189; Miller v. Schwinn, 72 App.D.C. 282, 113 F.2d 748; Thackston v. Farm Bureau Lbr. Corp., 212 Ark. 47, 204 S.W.2d 897; Brown v. Taylor, 115 Tenn. 1, 88 S.W. 933, 4 L.R.A.,N.S., 309, 112 Am.St. Rep. 811, and Annotation at p. 310; Lavey v. Graessle, 245 Mich. 681, 224 N.W. 436, 64 A.L.R. 1477 and Annotation at p. 1479; 21 C.J.S., Covenants, § 39, p. 909; 14 Am.Jur., Covenants, etc., § 100, p. 547.

Scott v. Albemarle Horse Show Ass'n, 128 Va., 517, 104 S.E. 842, 848, says:

But the result would be the same, even if it were shown that, at the time Scott entered into the contract, he had knowledge of the existence of the building restrictions in the deed under which the horse show association held title.

"Mere knowledge of an incumbrance at the time of the contract * * * does not necessarily cut off a defense against the specific execution of a contract for the sale of real estaate." Riner v. Lester, supra [121 Va. 563, 93 S.E. 594].

The rights of Holladay to the refund are clear. The matter is made even clearer by what the Court said in Madbeth, Inc. v. Weade, supra, 129 S.E.2d 667, 670:

The burden was on the plaintiffs, when apparent defects in the title were called to their attention, to remove the defects or to show that the title was otherwise marketable. They have failed to follow either course. Under such circumstances, they should not be heard to say that the defendant breached the contract by refusing to accept a title which they, themselves,

were unwilling to sustain. McAllister v. Harman, supra, 101 Va. at pp. 25, 26, 42 S.E. 920. Hendricks & als. v. Gillespie, 25 Gratt. 66 Va. 181, 197, 198.

In Sachs v. Owings, 121 Va. 162, 92 S.E. 997, the purchaser contracted for "a good and sufficient deed * * * with general warranty and covenants of title." The Court said such a purchaser was entitled to "require a marketable title to be conveyed to him." Numerous authorities are cited for this statement. At page 999, the Court continued:

The vendee under such a contract as that in evidence may, at law, elect to rescind the contract, if his vendor cannot, on the day fixed for completing it, convey to him a marketable title (see authorities above cited), and in such case, as he is not in equity asking the enforcement of the contract and his vendor is in default already, the vendee is not required to tender payment to his vendor of any balance due of unpaid purchase money, or to do any further act himself in completion of the contract, such as tendering notes for deferred payments contracted for, or the like, which would in such case be superfluous. Maupin on Marketable Titles, etc., § 87; Morange v. Morris, 34 Barb. (N.Y.) 311.

See also Pinsky v. Kleinman, supra, holding the purchaser is entitled to rescind and recover back the monies paid. It is true in the *Sachs* case the Court held that the purchaser must have been aware of an easement for a telephone line and have taken this into consideration in fixing the purchase price. This is not the case at bar. Holladay did not have knowledge of the easements. In addition, the Court subsequent to the *Sachs* case, in Adams v. Seymour, supra, held the purchaser could rely on the covenant in his contract, regardless of his knowledge of any encumbrance. See also Miller v. Schwinn, supra, and Hicks v. Howell, 203 Va. 32, 121 S.E.2d 757.

The contract having required a conveyance of the farm free from encumbrances, and the easements constituting encumbrances preventing Master from complying with his undertaking and agreement, Holladay was entitled to rescind, and is entitled to a refund of his deposit. Accordingly, an order may be presented directing the Clerk to make refund of said deposit of $50,000.00.