**CIRCUIT COURT OF THE CITY OF RICHMOND**

Capital Realty, Inc.

    v.

D. Sam Perry, Jr.

          Case No. LM-3349-4


R. T. Tepper, Jr.,
and C. L. Major, Trustees

    v.

D. Sam Perry, Jr.

          Case No. LM-3350-1

          December 5, 1989

By JUDGE RANDALL G. JOHNSON

These consolidated cases were tried to the court, sitting without a jury, on September 22, 1989. At the conclusion of the evidence, the court took the matter under advisement to allow counsel to file written memoranda on the legal issues involved. Those memoranda have now been filed.

The motion for judgment filed by Tepper and Major alleges that defendant, D. Sam Perry, breached a real estate sales contract. They seek damages in the amount of $40,000, which is the difference between the price of their contract with defendant and the amount they received from a subsequent purchaser.

The other motion for judgment, filed by Capital Realty, Inc., seeks $18,250 which is the real estate commission it claims it lost as a result of defendant's breach.

*Facts*

The material facts were not very vigorously contested at trial and are stated here as findings of the court. On December 23, 1987, defendant entered into a contract with the sellers agreeing to purchase an apartment complex known as 2503 and 2505 Lynnhaven Avenue in the City of Richmond. The purchase price was $365,000 with a commission of 5%, or $18,250, being earmarked for Capital Realty as the procuring agent. Closing was set for March 31, 1988.

Prior to closing, defendant employed a surveyor to perform a survey of the property. That survey revealed that a portion of the property, including a portion on which some of the improvements were located, was in a HUD A-2 flood plain. Because of this fact, defendant refused to comply with the contract, and these suits followed.

Defendant claims that he was legally justified in refusing to honor his contract for three reasons. First, he claims that the sellers committed fraud by not informing him that the property was located in a HUD flood plain. Second, he states that the flood plain designation is an encumbrance on the property which adversely affects the property's marketability, thus constituting a breach of the sales contract by the sellers. Third, defendant argues that the existence of the flood plain designation is a material fact not known or contemplated by the parties before entering into the contract, thus creating a mutual mistake of fact which renders the contract unenforceable. Each of these theories will be discussed in turn.

## 1. *Fraud*

The evidence at trial failed to show that the sellers or Capital Realty knew, or had any reason to believe, that the property was located in a flood plain at the time the subject contract was formed. The evidence is uncontroverted that it was not until the survey was performed that any of the parties to these actions was aware of the flood plain designation. Since defendant has failed to show that any of the plaintiffs knowingly misrepresented

or failed to disclose a material fact, his defense based on fraud cannot stand.

## 2. *Encumbrance/Marketability*

Defendant next claims that the contract is unenforceable because the flood plain designation is an encumbrance affecting the property's marketability. In support of his position, defendant cites *Sterling v. Blackwelder*, 302 F. Supp. 1125 (E.D. Va. 1968), in which the court stated that a covenant against encumbrances "does not depend on the extent or amount of the diminution but extends to cases where, by reason of the burden, claim, or right the owner does not acquire complete dominion over the land." 352 F. Supp. at 1127. The court added:

> A burden may be inchoate, yet, if it is a right which may be enforced against the property and against the will and consent of the owner, it is within the category of an encumbrance. *Id*.

*Sterling* is easily distinguished from the cases at bar. *Sterling* involved a sales contract for property that was subject to nine easements. Easements constitute a right to, or interest in, property. Such rights and interests may be, and normally are, antagonistic to the owner's rights and interests in the property. By contrast, the inclusion of property in a HUD flood plain does not entitle anyone to a right to or interest in property. At most, it is a document restriction which is not subject to alienation, assignment, or devise. It does not limit the occupation or use of property, as easements normally do, but merely construction methods to be employed if further improvements are desired. The owner's dominion and control of the property is therefore not impaired, and his use and enjoyment of the property is not subject to the rights or interests of any other party.

Moreover, defendant's interpretation of the term "encumbrance" is refuted by *Sterling* itself, since the court specifically recognizes that an encumbrance is "every right to, or interest in, the land, to the diminution of the value of the land." *Id. See also Houchins v. Holcomb*, 106 W. Va. 79, 144 S.E. 884 (1928); 5A Michie's Jurispru-

dence, *Covenants*, § 1. As already noted, a flood plain designation is not a "right to, or interest in, the land."

Defendant further contends that the flood plain designation, even if not technically an encumbrance, so adversely affects marketability of title as to render the contract unenforceable. In support, defendant cites *Madbeth, Inc. v. Weade*, 204 Va. 199, 129 S.E.2d 667 (1963). There, the Supreme Court stated:

> A marketable title is one which is free from liens or encumbrances; one which discloses no serious defects and is dependent for its validity upon no doubtful questions of law or fact; one which will not expose the purchaser to the hazard of litigation or embarrass him in the peaceable enjoyment of the land; one which a reasonably well-informed and prudent person, acting upon business principles and with full knowledge of the facts and their legal significance, would be willing to accept, with the assurance that he, in turn, could sell or mortgage the property at its fair value. 204 Va. at 202.

This holding has no application here. First, there is no issue in the present case involving liens, and the question of encumbrance has already been addressed. Second, the question of "defects" and "validity" involves defects and validity of *title*, not alleged defects or disrepair of the property.

Third, there is no risk of litigation as that phrase is used in *Madbeth*; that is, a risk of an action to determine title. *See* 204 Va. at 202-203. Here, title to the property was clearly in the sellers at the time of the contract, and there were no reasonable grounds upon which to doubt that title was clear. By the same token, defendant cannot claim that his peaceable enjoyment of the property might be infringed upon by someone with a competing interest since, as already noted, a flood plain designation gives rights to no one.

And lastly, defendant cannot argue that a reasonably well-informed and prudent person, acting upon business principles and with full knowledge of the facts and their

legal significance, would not be willing to accept title to the property here. In making his argument, defendant again confuses the property's title with the property's physical characteristics. Since it is the *title* to the property which *Madbeth* addresses, and since the title to the property here was unquestionably clear, *Madbeth* does not apply.

## 3. *Mutual Mistake of Fact*

Finally, defendant argues that he should be released from the terms of the contract because neither he nor the sellers knew that the property was in a HUD flood plain. Specifically, he argues that the diminution in the property's value due to the risk of flooding, as well as increased insurance and rebuilding costs, are material matters at the heart of the agreement, and that since neither party was aware of those matters, the contract should be rescinded.

In support of his argument, defendant cites *Millman v. Swan*, 141 Va. 312, 127 S.E. 166 (1925). There, a seller had advertised two lots as being outside of certain city fire code restrictions, thus enabling the owner to build less expensively. Actually, one of the lots was within the restriction. Again, that case is totally inapposite here.

In the cases at bar, absolutely no representations regarding flood plain designation were made. While the flood plain designation may well increase insurance and building costs, it cannot be said that the absence of such designation was so significant as to be essential to the contract. Indeed, if defendant felt that the absence of such designation *was* essential to the contract, defendant has no one to blame but himself for not having a survey conducted *prior* to signing the contract, or for not including an escape clause in the contract itself. There was no mutual mistake of fact in these cases.

### Conclusion

For the foregoing reasons, judgment will be entered for the plaintiffs against defendant in both cases. In the case of the sellers, the evidence is that their contract

with defendant was for $365,000. The sellers were to pay a real estate commission of 5%, or $18,250, leaving net proceeds of $346,750. The subsequent contract was for $325,000. Again, a 5% real estate commission, $16,250, was charged, leaving net proceeds of $308,750. Thus, the actual difference in the amount realized by the sellers is $38,000 ($346,750 minus $308,750). Judgment will be entered for the sellers in that amount.

Capital Realty, Inc., the procuring agent in the seller's contract with defendant, was not involved in the subsequent sale. Accordingly, Capital is entitled, under the terms of the contract, to its entire commission of $18,250.