**BERNARDI BROTHERS, a Pennsylvania Partnership, et al., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–66C.

United States Court of Federal Claims.

Sept. 28, 2000.

George J. Shapiro, Reston, Virginia, attorney for plaintiff.

Mark L. Josephs, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden for defendant. Alfred J. Zwettler, Atlanta Field Office, United States Postal Service, of counsel.

## OPINION

MEROW, Senior Judge.

This government contracts case concerns an agreement for the sale of land from plaintiffs to the United States. The matter is before the Court on cross-motions for summary judgment. Defendant argues that plaintiffs failed to perform their obligations under the contract in a timely manner and that plaintiffs are unable to convey the exact property for which defendant bargained. Plaintiffs respond that they performed their obligations within a reasonable time and that they are able to convey property that is not materially different from the property specified in the contract. For the reasons stated below, defendant's motion for summary judgment is denied and plaintiffs' cross-motion is granted.

## BACKGROUND

The following facts are undisputed. Prior to 1991, Plaintiff Bernardi Brothers, a Pennsylvania partnership, leased certain real property, located in McLean, Virginia, to the United States Postal Service ("Postal Ser-

vice") for use as a postal facility. Bernardi Brothers agreed to sell this property to the Postal Service and the parties entered into a purchase and sale agreement. In February 1991, Bernardi Brothers and the Postal Service agreed to amend this contract. The amendment removed a 15–foot by 271–foot alley adjacent to the postal facility from the contract because Bernardi Brothers did not possess title to the alley at that time. The Postal Service subsequently purchased the postal facility.

On or about March 4, 1991, Samuel Andes, counsel to Bernardi Brothers, contacted Plaintiffs McLean Poplar Partners, Ltd. ("McLean") and RLB Associates ("RLB") regarding the status of the alley. McLean and RLB each owned property adjoining the alley opposite the postal facility. Mr. Andes informed them that the Postal Service had offered to purchase the alley separately. Mr. Andes proposed that Bernardi Brothers, McLean and RLB jointly petition Fairfax County to adopt an ordinance vacating the alley as a public way and therefore vesting title to the land in the adjacent property owners. Mr. Andes also proposed that the parties enter into an agreement to create a private right of way through the alley for McLean and RLB.

On April 2, 1991, Bernardi Brothers and the Postal Service executed an agreement pursuant to which the Postal Service would purchase the 15–foot by 271–foot alley from Bernardi Brothers. This agreement provided, in pertinent part:

2. In the event that Vendor [Bernardi Brothers] is successful and secures lawful title to such property, or any portion thereof, subject only to a private easement serving the adjoining landowners for the ingress and egress to and from such adjoining properties, on or before 20 September 1991, the Postal Service shall pay Vendor for the securing of such title a sum equal to $40.00 per square foot of the land to which title is secured to the Postal Service.

In letters to Ronald Regan, Real Estate Representative for the Postal Service, dated June 12, 1991, August 1, 1991 and August 20, 1991, Mr. Andes acknowledged the September 20 deadline for concluding the sale of the alley.

On August 28, 1991, the parties entered into two agreements regarding the sale of the alley to the Postal Service. The first was a reciprocal easement agreement granting McLean, RLB and the Postal Service a permanent easement and right-of-way across the alley for the ingress and egress of vehicles. This agreement would become effective upon the recording of the ordinance vacating the alley. The second agreement, between Bernardi Brothers, McLean, RLB and the Postal Service, provided that upon the recording of the easement agreement and the ordinance vacating the alley, the Postal Service would pay $40.00 per square foot to McLean and RLB for the land which vested in them as a result of the vacation and $40.00 per square foot to Bernardi Brothers for the land which vested in the Postal Service as a result of the vacation. No time for performance was set forth in the contract. However, the August 28 agreement did refer to the April 2 agreement between the Postal Service and Bernardi Brothers which contained the September 20 deadline. The contract provided that it would be interpreted under the laws of the Commonwealth of Virginia.

In a letter from Mr. Andes to Eugene Bernardi dated September 3, 1991, Mr. Andes stated that the agreement with the Postal Service required Bernardi Brothers to conclude the transaction by the end of September. However, Bernardi Brothers was unable to secure the ordinance vacating the alley by this date. In a letter to Mr. Regan dated October 1, 1991, Mr. Andes wrote that he was now working to try to conclude settlement in late November. Mr. Andes indicated that he had spoken to Dan Curts, a Postal Service attorney, and that Mr. Curts had indicated that settlement after the September 20 deadline would not be a problem as long as Bernardi Brothers kept the Postal Service informed of the schedule.

On November 13, 1991, Mr. Andes wrote to Mr. Regan indicating that there would be a further delay in vacating the alley. Mr. Andes advised Mr. Regan that Fairfax County required an easement agreement from all adjoining property owners giving the county

use of the alley for emergency and maintenance vehicles. The county also required an easement for the maintenance of the utility poles and lines within the alley.

The record shows that there was no further communication between the Postal Service and plaintiffs until October 1993, when Mr. Andes wrote to Mr. Regan and Mr. Curts stating that Bernardi Brothers had been struggling for more than two years to vacate the alley and hoped to conclude the matter within the next 60 to 90 days. Bernardi Brothers continued to struggle for another year, during which time Mr. Andes and the Postal Service corresponded on several occasions regarding the vacation and the availability of funds for the purchase of the alley. In a letter to Dan Evitts, Real Estate Specialist at the Postal Service, dated June 24, 1994, Mr. Andes advised the Postal Service that the vacation would take place within the next 90 to 120 days.

Mr. Evitts subsequently wrote a letter dated June 29, 1994 to Gary Martin in the Administrative Services Office advising him that the Postal Service must allocate the purchase price in the near future. On August 11, 1994, the Postal Service did in fact authorize $162,600.00 for the purchase of the alley. This expenditure was justified on August 18, 1994.

Fairfax County finally vacated the alley at a meeting on October 10, 1994. In a letter dated November 1, 1994, Mr. Andes advised Mr. Evitts that the vacation would be effective November 10, 1994 and that the plaintiffs would be ready to settle the transaction on November 17, 1994. The vacation ordinance was recorded in the land records of Fairfax County on December 1, 1994. The reciprocal easement agreement was also recorded.

In a letter to John Boland, counsel for the plaintiffs, dated July 14, 1995, Alfred Zwettler, a Postal Service attorney, indicated that Postal Service was not aware of any obligation to close the McLean alley acquisition.

On January 31, 1997, plaintiffs filed a complaint in this Court seeking a judgment in the amount of $171,600, representing the purchase price for the alley, plus interest, costs and attorney fees. Plaintiffs assert that defendant breached the contract by refusing to pay the purchase price for the alley and that plaintiffs are entitled to damages.[1]

Defendant subsequently moved for summary judgment pursuant to RCFC 56. In support, defendant contends that plaintiffs failed to fulfill their obligations under the contract in two respects. First, defendant argues that plaintiffs were unable to perform their obligations by the September 20, 1991 deadline or, alternatively, within a reasonable time. Second, defendant claims that plaintiffs were unable to convey to defendant the exact property for which defendant had bargained due to the presence of the two additional easements.

Plaintiffs oppose defendant's motion and have cross-moved for summary judgment. Plaintiffs argue that time was not of the essence in this contract and that they performed their obligations within a reasonable time. Plaintiffs further argue that the additional easements do not materially affect defendant's use of the alley and therefore do not allow defendant to rescind the contract. Plaintiffs contend that defendant's failure to tender the purchase price is a breach of contract entitling plaintiffs to judgment as a matter of law.

## DISCUSSION

### A. Summary Judgment Standards

Summary judgment is appropriate when there are no genuine disputes over material facts and the moving party is entitled to prevail as a matter of law. RCFC 56(c); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987). In cases in which both parties move for summary judgment, each party bears the burden of demonstrating the absence of material facts in its own case. *Celotex Corp. v. Catrett,* 477

---

1. In the complaint, plaintiffs also set forth a second count seeking specific performance of the contract. On May 1, 1997, defendant moved to dismiss Count II pursuant to RCFC 12(b)(1). On June 9, 1997 plaintiffs filed their consent to the dismissal of Count II. Count II was dismissed, without prejudice, by Order of this Court on June 11, 1997.

U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail upon a motion for summary judgment, a party must demonstrate that no facts exist which would change the outcome of the litigation under the substantive law governing the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. MERITS

### 1) Timeliness of Plaintiff's Performance

■ Virginia law generally holds that in a contract for the sale of land time is not of the essence unless expressly stipulated in the agreement, or it necessarily follows from the conduct of the parties or the circumstances of the agreement. *See Wood v. Wood*, 216 Va. 922, 224 S.E.2d 159 (1976); *Sims v. Nidiffer*, 203 Va. 749, 127 S.E.2d 85 (1962). The language of the April 2 agreement indicates that the obligation of the Postal Service to purchase the land arises if plaintiffs are able to secure the vacation of the alley on or before September 20, 1991.[2] This language does more than merely set a date for settlement, as plaintiffs contend. It requires plaintiffs to perform, by a specific date, an act which is a condition precedent to the Postal Service's obligation to pay. However, plaintiffs are correct that this deadline, standing alone, does not expressly make time of the essence in the contract. *See Mayers v. Mayers*, 15 Va.App. 587, 425 S.E.2d 808, 810 (1993) (agreement that required sale of home within 90 days did not expressly provide that time was of the essence); *Dziarnowski v. Dziarnowski*, 14 Va.App. 758, 761, 418 S.E.2d 724, 725–26 (1992) (time was not of the essence where the agreement required an exchange of documents by a certain date as a condition to husband's obligation to pay spousal support). Even so, the fact that the Postal Service's obligation to pay is conditioned upon plaintiffs achieving the vacation of the alley by a specific date makes it at least plausible that the Postal Service considered time to be of the essence.

■ When considering the question of whether time is of the essence in a contract, courts "look first to the language used and when that is not conclusive we look to the circumstances which led to their execution." *Morris v. Harrop*, 154 Va. 127, 152 S.E. 343, 345 (1930). The intent to make time essential in a contract can be inferred from the conduct of the parties. *See Wood*, 224 S.E.2d at 161. In this case the conduct of the parties leads to the conclusion that time was not of the essence in the contract. There is no evidence in the record to indicate that the Postal Service considered that the September 20 deadline was critical to the contract. Although plaintiffs acknowledged this deadline on several occasions, the Postal Service never communicated an intent to enforce the deadline. There is no evidence that the parties intended that the contract would become void after the deadline had passed. Defendant freely waived the deadline and made it clear it would accept performance well after September 20, 1991. Thus, the circumstances and conduct of the parties show that time was not of the essence in the contract. *See Wood*, 224 S.E.2d at 161; *Sims*, 127 S.E.2d at 88.

■ Even if time was originally of the essence in the April 2 agreement, the Postal Service waived its right to terminate the contract for late performance by allowing plaintiffs to continue to attempt to secure the vacation past the September 20 deadline. *See DeVito v. United States*, 188 Ct.Cl. 979, 413 F.2d 1147 (1969). Once the Postal Service waived the original deadline, it must set a new deadline for performance in order to make time of the essence in the contract. *See Olson Plumbing & Heating Co. v. United States*, 221 Ct.Cl. 197, 602 F.2d 950 (1979); *Boston v. Shackelford*, 162 Va. 733, 175 S.E. 625 (1934). The Postal Service made no such demand. Therefore, time was not of the essence in the contract.[3]

---

**2.** "In the event that [Bernardi Brothers] ... secures lawful title...on or before 20 September 1991, the Postal Service shall pay ..."

**3.** Because time was not of the essence in the April 2 agreement, it is unnecessary to address plaintiff's argument that the August 28 agreement superseded the April 2 contract.

In contracts for the sale of land in which time is not of the essence, the law requires performance within a "reasonable time." *See Societe Anonyme Des Ateliers Brillie Freres v. United States,* 160 Ct.Cl. 192, 1963 WL 8581 (1963); *Ryland Group, Inc. v. Wills,* 229 Va. 459, 331 S.E.2d 399 (1985). "What is a reasonable time is a very indefinite term, varying as to the act to be done and the circumstances of the particular act." *Virginia Hot Springs Co. v. Schreck,* 131 Va. 581, 109 S.E. 595, 597 (1921). In this case, plaintiffs were required to convince the government of Fairfax County to pass an ordinance vacating the alley. It took approximately three and one-half years for plaintiffs to accomplish this task. While that is certainly a lengthy amount of time and clearly more time than the parties originally contemplated, it is not necessarily unreasonable for it to take more than three years to convince a legislative body to act.

There is no evidence in the record that the Postal Service suffered any harm as a result of the delay. In fact, it enjoyed the use of the alley during the entire period. The Postal Service has offered no evidence to contradict plaintiffs' assertion that they used their best efforts in attempting to secure the vacation. Although plaintiffs failed to provide the Postal Service with a status report for approximately two years, the Postal Service likewise did not contact plaintiffs. Thus, considering that plaintiffs could not directly control when Fairfax County would pass the ordinance and that the Postal Service has failed to show any prejudice as a result of the delay, it is concluded that plaintiffs performed their obligations under the contract within a reasonable time.

### 2) Additional Easements

Defendant argues that even if plaintiffs secured the vacation of the alley within a reasonable time, it is not obligated to purchase the alley because it is subject to two additional easements. The April 2 agreement states that the Postal Service shall purchase the alley "subject only to a private easement serving the adjoining landowners for the ingress and egress to and from such adjoining properties." Thus, defendant contends that the fact that the alley is subject to two additional easements for county emergency vehicles and utility maintenance entitles defendant to rescission of the contract. Plaintiff responds that the additional easements are a minor (if any) burden to the Postal Service and therefore are not a material breach of the contract.

Under Virginia law it is not clear whether easements of this type would allow defendant to rescind the contract. Defendant relies on *Sterling v. Blackwelder,* 302 F.Supp. 1125 (E.D.Va.1968), in which the court held that the purchaser was entitled to rescission where the property in question was subject to nine additional easements. *Sterling* is factually distinguishable from the present case because of the number and scope of the easements at issue there. However, the court noted that "an encumbrance has been defined as every right to, or interest in the land granted" and thus the court's rationale could be applied to the present case in which there are only two relatively minor easements. *Id.* at 1129.

In an attempt to distinguish *Sterling,* plaintiffs cite *Capital Realty, Inc. v. Perry,* 17 Va. Cir. Ct. 417, arguing that there the Virginia Court refused to apply the rationale of the Federal Court. In fact, the court made only factual distinctions because its case dealt with a HUD flood plain, instead of with easements. *See id.* Contrary to plaintiffs characterization of the case, the court ruled "easements constitute a right to, or interest in, property. Such rights and interests may be, and normally are, antagonistic to the owner's rights and interests in the property. By contrast ... a HUD flood plain ... does not limit the occupation or use of property, as easements normally do." *Id.* Thus, it could be argued that *Capital Realty* implies that only one easement could be an encumbrance that would entitle a purchaser to rescission. However, as plaintiffs argued, the court also indicated that the encumbrance may need to cause at least some material impairment of the owner's control of the property in order to constitute a basis for rescission.[4]

4. Plaintiffs also cited several cases from other     states, as well as legal digests, which stand for

Fortunately, the question of whether the presence of the additional easements should entitle the Postal Service to rescission is now moot. Even if Virginia law gave defendant the right to rescind the contract, defendant waived that right by allowing plaintiffs to continue to attempt to secure the vacation long after learning of the existence of the easements. Plaintiffs informed the Postal Service of the two additional easements by letter dated November 13, 1991. It was not until July 1995 that the Postal Service notified plaintiffs that the two additional easements were unacceptable. As noted above, when the government allows a delinquent contractor to continue performance after default, the government waives its right to terminate the contract for that default. *De-Vito*, 188 Ct.Cl. at 990–91, 413 F.2d 1147. Thus, on the same rationale, the Postal Service is now barred from claiming that the additional easements entitle it to rescission.

### CONCLUSION

For the foregoing reasons, it is **OR-DERED**:

(1) That Defendant's Motion for Summary Judgment is **DENIED**;

(2) Plaintiffs' Motion for Summary Judgment is **GRANTED** on the issue of liability;

(3) Counsel shall confer and, on or before October 30, 2000, forward a stipulation as to the terms and amounts involved for the entry of final judgment(s) or a Status Report(s) indicating further proceedings are required in this regard and proposing an appropriate schedule.

the proposition that an easement that does not interfere with the purchaser's use of the property will not entitle him to rescission. Although this

appears to be the rule in the majority of states, it is not controlling here.