NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-2314 and 09-2399
_____

GOLDFISH SHIPPING, S.A.,

Appellant No. 09-2314
v.

HSH NORDBANK AG

Appellant No. 09-2399
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cv-03518)
District Judge:  Honorable John R. Padova
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 12, 2010

Before:  FISHER, HARDIMAN and COWEN, *Circuit Judges*.

(Filed: April 21, 2010)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Goldfish Shipping, S.A. ("Goldfish") appeals from an order of the District Court

granting HSH Nordbank AG's ("Nordbank") motion to dismiss for failure to state a claim

upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) and an order rejecting Goldfish's Motion to file a Second Amended Complaint. Nordbank cross-appeals the District Court's order denying attorney's fees to Nordbank. For the reasons stated herein, we will affirm the District Court in full.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of the case. Therefore, we will set forth only those facts necessary to our analysis.

Nordbank held a first mortgage on the M/V AHMETBEY ("the vessel") at the time it arrived in the Port of Philadelphia. The mortgagor was Odin Denizcilik, A.S. ("Odin"), a Turkish corporation. The vessel flew the Turkish flag and appeared on the Turkish Registry of Shipping ("Turkish Registry"), with Odin listed as the owner.

On June 6, 2003, Nordbank initiated foreclosure proceedings on the vessel in the United States District Court for the Eastern District of Pennsylvania alleging default on the part of Odin. Nordbank had the United States Marshal arrest the vessel in the Port of Philadelphia pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S.C. § 31325 ("Ship Mortgage Act"). Odin entered a restricted appearance with the District Court to defend its interest. The Court ultimately found in favor of Nordbank and ordered that the vessel be sold to satisfy the mortgage. A judicial sale was held with Goldfish emerging as the winning bidder. On November 14, 2003, the District Court confirmed

the sale of the vessel in accordance with the Ship Mortgage Act and ordered that the United States Marshal transfer title to the vessel to Goldfish free and clear of all claims, liens, or encumbrances.

After the District Court's disposition in the foreclosure proceeding, the vessel remained on the Turkish Registry, with Odin listed as its owner. Odin contacted both Nordbank and Goldfish to inform them that it would continue to fight for ownership of the vessel. Odin had the vessel arrested in Barcelona, Spain, alleging that the sale in Philadelphia was illegal under Turkish law. Goldfish alleges a loss of $581,048.34 as a result of this incident. Goldfish subsequently began an action against Odin for wrongful arrest by attaching the prior sale proceeds, which were being held by the United States Marshal. Pursuant to a consent order between Nordbank and Goldfish, Goldfish recovered $327,546.82 from the sale proceeds. Odin again caused the vessel to be arrested on June 4, 2004, in Ravenna, Italy. Goldfish alleges that it incurred losses of $507,369.00 due to this arrest.

Goldfish argues that the arrests were the direct result of the fact that Nordbank did not effect the deletion of the vessel from the Turkish Registry under Article 851 of the Turkish Commercial Code. Goldfish requested that Nordbank provide consent to the deletion, and Nordbank sent an April 30, 2004 letter to the Turkish Registry consenting to the deletion from the Turkish Registry, but asserting the continued existence of its mortgage.

Goldfish subsequently filed suit against Nordbank in the District Court for Eastern District of Pennsylvania. Goldfish's First Amended Complaint asserted nine claims and reflected Goldfish's argument that Nordbank should be held liable for failing to deliver the vessel "free and clear of all liens and encumbrances" because it did not successfully delete the vessel from the Turkish Registry.

The District Court granted Nordbank's Motion to Dismiss, but denied its request for attorney's fees from Goldfish. Goldfish then filed a Motion to Amend the Judgment and sought leave to file a Second Amended Complaint. The District Court denied Goldfish's Motion to Amend the Judgment and its accompanying request for leave to file a Second Amended Complaint because of Goldfish's undue delay and the futility of the Second Amended Complaint. Goldfish filed a timely notice of appeal.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review of the District Court's order granting Nordbank's Motion to Dismiss the First Amended Complaint is plenary. *AT&T v. JMC Telecom, LLC*, 470 F.3d 525, 530 (3d Cir. 2006). We must accept as true all of the allegations contained in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff. Upon review of the District Court's decision of the denial of Goldfish's Motion to Amend, we will only reverse if the District Court abused its discretion. *Ramsgate Court Townhome Ass'n v. West Chester Borough*,

4

313 F.3d 157, 161 (3d Cir. 2002). Our standard of review of the District Court's decision not to award attorney's fees to Nordbank is also for an abuse of discretion. *Doering v. Union County Bd. Of Chosen Freeholders*, 857 F.2d 191, 195 (3d Cir. 1988). "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987).

III.

A.     Nordbank's Motion to Dismiss Goldfish's First Amended Complaint

Goldfish does not allege any defect in the sale of the vessel itself but instead claims that Nordbank was required to take action beyond the sale in order to ensure title free and clear of all encumbrances would be presented to the buyer. The Supreme Court has noted that the "dominion of the suit in admiralty over the vessel or thing itself . . . gives to the title made under its decrees validity against all the world." *The Moses Taylor*, 71 U.S. 411, 427 (1866). In *Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 1015, 1022 (3d Cir. 1993), this Court examined the consequences of a judicial sale under the Ship Mortgage Act. Particularly, we noted that Congress intended for sales under the Act to provide for "an expeditious procedure by which a United States court sitting in admiralty may foreclose a ship mortgage on a foreign-flag vessel and give title good against the world to the new purchaser." *Id.* (quoting H.R. Rep. No. 1662, 83d Cong., 2d Sess. *reprinted in* 1954 U.S.C.C.A.N. at

5

2452).  The consequences of the judicial sale itself are to extinguish any previous rights in the vessel and to deliver title to the purchaser free and clear of any encumbrances as a matter of law.  All rights Nordbank and Odin had in the vessel before the sale were extinguished, and Goldfish's claim to ownership was free and clear of any encumbrances anywhere in the world.  The fact that the vessel had not been deleted from the Turkish Registry has no bearing on the legal status of Goldfish's claim.  Odin's illegal actions in arresting the vessel on multiple occasions do not alter the fact that the legal and rightful owner of the vessel was Goldfish.  The party at fault in the interference of Goldfish's ownership of the vessel was Odin, not Nordbank.

Goldfish argues that the sale of the vessel created a duty for Nordbank to take affirmative steps to effect the vessel's deletion from the Turkish Registry.  Goldfish cites no cases in admiralty evidencing such a duty but instead turns to analogous state law.  While federal courts sitting in admiralty will sometimes borrow law from the states and incorporate it into general maritime law, Goldfish has not presented analogous law which imposes any duty to take further action to clear title after a judicial sale has taken place.  *See East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864 (1986).

To support the conclusion that transfers of title in court can give rise to continuing duties on the transferor of the property, Goldfish relies solely on *Sterling v. Blackwelder*, 302 F. Supp. 1125 (E.D.Va. 1968).  In *Sterling*, the transfer was effected by a contract, and the court relied upon the language of the contract that purported to convey property

6

"free from all encumbrances." *Id.* at 1128-29. Contracting parties in a real estate transaction do not have the power to extinguish all other impairments of title the way that the federal courts do under the Ship Mortgage Act, and thus *Sterling* cannot be read to impose the same duties on foreclosing creditors in an admiralty case that it would on parties to a real estate transaction, even if under the supervision of a state court. Unlike *Sterling*, when the District Court in this case transferred title to Goldfish under the Ship Mortgage Act, it also extinguished all encumbrances as a matter of law and delivered clear title. Any attempt by Odin to enforce rights in the vessel after the District Court's decree was without legal merit.

Because it is clear that, upon the decree of the District Court, Goldfish held free and clear title and that Nordbank had no duty to do take additional steps to clear title, all of Goldfish's claims fail. Goldfish's asserted causes of action against Nordbank rely on the assumption that Goldfish did not receive clear title and that Nordbank in some way prevented Goldfish from receiving that to which it was entitled. While it is quite unfortunate that Goldfish's enjoyment of the vessel has indeed been interfered with, this interference has nothing to do with any defect in title as a matter of law, but is instead due to the illegal actions of Odin.

B.      Goldfish's Motion for Leave to Amend the Complaint

The District Court refused to grant leave to amend based on both futility and inequity. In *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002), we held

7

that an amendment must be permitted unless inequitable or futile. We find that it was not an abuse of discretion for the District Court to find that Goldfish's Second Amended Complaint was futile.

Futility means that the complaint, "as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The District Court below opined that the Second Amended Complaint is essentially the same as the First Amended Complaint except that it placed more emphasis on the belief that Nordbank had a duty to take further action after the sale. Since the Court had held in its previous opinion that, as a matter of law, a foreclosing creditor at a sale under the Ship Mortgage Act had no further duty to clear title, the Court determined that Goldfish's Second Amended Complaint would still fail to state a claim upon which relief could be granted. In the light of our holding that Nordbank had no further duties, it is clear that the District Court did not abuse its discretion in denying Goldfish's Motion to Amend.

C.    Nordbank's Motion for Award of Attorney's Fees

In its Motion to Dismiss, Nordbank asked the District Court to uses its inherent powers in admiralty to order Goldfish to pay Nordbank's attorney's fees. The District Court was not convinced that Goldfish initiated this action for an improper purpose and denied Nordbank's motion. The Second Circuit in *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 309 (2d Cir. 1987), stated that "the general rule is that the award

of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith." There is nothing in the record to indicate that the District Court abused its discretion in concluding that Goldfish did not bring suit in bad faith, and thus its decision should stand.

IV.

For all the foregoing reasons, we will affirm the District Court's order dismissing for failure to state a claim, denying leave to amend the complaint, and denying attorney's fees.